UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-cv-188-BO-KS

UNITED STATES OF AMERICA,

   Plaintiff,

v.

BILLY JOE GOINES d/b/a GOINES
TOWING & RECOVERY,

   Defendant.

**BRIEF IN SUPPORT OF MOTION
TO DISMISS**

  Defendant, Billy Joe Goines d/b/a Goines Towing & Recovery ("Goines Towing"), through counsel and pursuant to Fed R. Civ. P 12(b)(6) and Local Civil Rules 7.1 and 7.2, offers the following brief in support of its Motion to Dismiss the government's Complaint in its entirety.

## STATEMENT OF THE CASE

  The government has alleged violations of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 *et. seq.*, for "failing to file, and filing inaccurate, military affidavits in default judgment proceedings . . . ." Complaint, DE 1, ¶ 34 ("Compl."). The government seeks a judgment declaring that Goines Towing violated SCRA, an injunction requiring Goines Towing to change its practices, the award of monetary damages to identifiable victims, and the assessment of a civil penalty against Goines Towing. *Id.* at 8–10. Goines Towing seeks dismissal of the Complaint in its entirety.

Case 7:23-cv-00188-BO-KS  Document 13  Filed 05/02/23  Page 1 of 23

Goines Towing is a wrecker and towing company located in Onslow County, North Carolina, near Marine Corps Base Camp Lejeune ("Camp Lejeune"). When requested, Goines Towing removes vehicles from private property, public areas, Camp Lejeune, and Marine Corps Air Station New River. If a vehicle removed by Goines Towing is not claimed by the owner, Goines Towing initiates default judgment proceedings as outlined by North Carolina law. Part of that process is filing a federally mandated SCRA affidavit, pursuant to 50 U.S.C. § 3931, with the local county Clerk of Court that accompanies the petition for sale. That form affidavit includes a box that requires the plaintiff to state if they are "unable to determine" if the defendant is in military service. *See* Exhibit A, N.C. Admin. Office of the Courts Form AOC-G-250, Rev. 5/21.[1]

For the four vehicles that are the subject of the government's Complaint, the government alleges that Goines Towing violated SCRA by not conducting enough due diligence or "good faith" efforts to investigate the military status of each vehicle's owner. However, the level of diligence or "good faith" efforts the government alleges should have been undertaken appear absolutely <u>nowhere</u> in SCRA's statutory language or any federal regulations. Furthermore, Goines Towing complied with the existing federal and state law and procedure when seeking default judgments, a conclusion unchallenged by the Complaint. Because the government invokes a

---

[1] Though the North Carolina form is a declaration and not an affidavit, it still satisfies SCRA's affidavit requirement. 50 U.S.C. § 3931(b)(4). This form is also available at the N.C. Administrative Office of the Courts website: https://www.nccourts.gov/assets/documents/forms/g250_2.pdf?VersionId=AWcozTyf LpwG7Dw7r5i_P3Cj_iIxc0To.

Case 7:23-cv-00188-BO-KS   Document 13   Filed 05/02/23   Page 2 of 23

heightened, manufactured standard of care that legally does not exist, the Complaint must be dismissed in its entirety.

## RELEVANT BACKGROUND[2]

## I. GOINES TOWING AND THE JUDICIAL SALE OF UNCLAIMED VEHICLES

Goines Towing is a sole proprietorship wrecker operator owned and operated by Billy Goines. Compl. ¶ 7. It is based in Onslow County, North Carolina, and does business as Goines Towing & Recovery. *Id.* Mr. Goines and the Goines Towing staff are proud members of the Jacksonville and Onslow County communities and support their fellow community members of the United States military, veterans, and their families.

As a wrecker operator, Goines Towing is authorized by state law to tow vehicles. *See* N.C. Gen. Stat. § 20-219.2; *see also* Compl. ¶¶ 17–19. After removal of a vehicle, Goines Towing stores it at its facility in Onslow County until it is claimed or sold. Compl. ¶¶ 18–19. By North Carolina law, Goines Towing is authorized to charge vehicle owners a towing and storage fee that the owner is obligated to pay when the vehicle is retrieved. N.C. Gen. Stat. §§ 20-219.2(a), (a2); 44A-2(d); 44A-4(a).

If a vehicle is never claimed, a wrecker operator is allowed to seek a North Carolina state court order authorizing the judicial sale of the vehicle. *Id.* § 44A-4(a). Before a default sale can be made, the North Carolina Department of Motor Vehicles ("DMV") mails notice to the registered owner and all lienholders. *See* Compl. ¶¶ 18–

---

[2] Goines Towing strongly refutes the Complaint's allegations but takes them as true for the purposes of this Motion.

19. After a period of time, the wrecker operator can then petition their local court to order the sale of the vehicle, typically through a default judgment. *See id.* ¶¶ 20–22.

As with any default proceeding, a plaintiff seeking a default judgment to sale a vehicle must file an affidavit attesting to their knowledge of the defendant's military status. 50 U.S.C. § 3931(a)–(b). In North Carolina, plaintiffs use form AOC-G-250 provided by the North Carolina Administrative Office of the Courts. *See* Exhibit A. That form gives a plaintiff three options regarding the defendant's military status:

> 1) I have personal knowledge that the defendant named above is in military service.*
> 2) I have personal knowledge that the defendant named above is **not** in military service.*
> 3) I am unable to determine whether the defendant named above is in military service.*

*Id.* (bold in original). There is then another block that allows the plaintiff to note if they did or did not use the Department of Defense ("DoD") website established for looking up a defendant's military status. *Id.*[3] Finally, a plaintiff can include any additional information regarding its attestation as to their personal knowledge of the defendant's military service. *Id.* That section includes the following instructions: "State how you know the defendant is or is not in the military. Be specific." *Id.* This SCRA affidavit is filed along with a Petition for Sale of Vehicle. *See* Exhibit B, N.C. Admin. Office of the Courts Form AOC-SP-905, Rev. 9/21.[4]

---

[3] *Welcome to the Official Servicemembers Civil Relief Act (SCRA) Website*, U.S. Dep't of Def., https://scra.dmdc.osd.mil/scra/#/home (last visited May 1, 2023).

[4] This form is also available at the N.C. Administrative Office of the Courts website: https://www.nccourts.gov/assets/documents/forms/sp905_1.pdf?VersionId=a

At that point, the state court then determines whether an order for sale should be issued or if additional steps should be taken to protect the defendant. *See* 50 U.S.C. § 3931(b)(2)–(3), (d), (g). If the order for sale is granted,[5] a wrecker operator is permitted to recover a lien in the amount of the unpaid towing and storage fees accumulated between the time the vehicle was towed and its sale. N.C. Gen. Stat. §§ 44A-2(d); 44A-4(a).

## II.    THE STATE COURT'S OBLIGATIONS UNDER SCRA

As referenced above, after a plaintiff presents a SCRA affidavit to a court, the court may take additional steps to protect the defendant. A court may require a bond from the plaintiff and "issue such order or enter such judgment as the court determines necessary to protect the rights of the defendant under this chapter." 50 U.S.C. § 3931(b)(3).

Furthermore, even if a court does not require such protections before entering a default judgment, SCRA still gives courts other options to protect a defendant who is subsequently found to be in military service. *See id.* § 3931(g). Specifically, the judgment can, in some cases, be vacated, while still protecting any bona fide purchasers. *Id.* § 3931(g)–(h).

---

v7knPt7DVimPMYSaakMgtVzefaxMQ1Z. Please note that this form changed over time during the course of events noted in the Complaint.

[5] The court issues its order on an "Order Authorizing Motor Vehicle Sale." *See* Exhibit C, N.C. Admin. Office of the Courts Form AOC-SP-906M, Rev. 4/97. This form is available at the N.C. Administrative Office of the Courts website: https://www.nccourts.gov/assets/documents/forms/sp906m-en.pdf?VersionId=u055z_3UduNY3Bx5LQxPMBh98U1W8t4i.

Case 7:23-cv-00188-BO-KS   Document 13   Filed 05/02/23   Page 5 of 23

In short, state courts play a critical role in protecting servicemembers, and SCRA gives them broad powers to fulfill that duty.

### III. SPECIFIC SALES ALLEGED IN THE COMPLAINT

Notably, the government alleges that Goines Towing did follow the state procedures for a judicial sale outlined above for the four vehicles mentioned in its Complaint. However, the government complains that the process was defective—and that this problem is Goines Towing's fault—because the SCRA affidavits were not completed following a "good faith" investigation, Compl. ¶ 2, though this requirement does not exist under any statutory or regulatory authority. Below is a summary of the relevant allegations for each vehicle.

### A. 2007 Toyota FJ Cruiser

The majority of the government's allegations are dedicated to Goines Towing's sale of a 2007 Toyota FJ Cruiser (the "FJ Cruiser") owned by a Corporal ("Cpl") Cameron Chancellor.[6] In February 2021, Goines Towing removed the FJ Cruiser from a private parking lot in Jacksonville, North Carolina. Compl. ¶ 16. It was not parked aboard Camp Lejeune or any other military facility. *Id.* The FJ Cruiser had a Marine decal, but there is no allegation it was a decal only current military members could have. *Id.* ¶ 15. Additionally, photos of Cpl Chancellor in uniform were allegedly in the glovebox, but those would not have been visible to someone looking in the car, and there are no allegations that anyone from Goines Towing looked into or entered the car. *See id.*

---

[6] It is unclear from the Complaint if Cpl Chancellor is still in the Marines.

Case 7:23-cv-00188-BO-KS   Document 13   Filed 05/02/23   Page 6 of 23

The government seems to conclude, with no factual basis, that based on these circumstances Goines Towing should have assumed automatically that the FJ Cruiser was actually owned by an active service member—not an inactive service member, retired servicemember, non-military friend, or a family member—in a military town where many in the community are somehow connected to the military but only around 1/3 are active duty. *Id.* ¶ 10.

By October 26, 2021, the FJ Cruiser was not claimed, so Goines Towing initiated default sales proceedings. *Id.* ¶ 20. At the first step in that process, Goines Towing identified the registered owner's address and any lienholders. *Id.* ¶¶ 13–14, 18–19. The FJ had two registered addresses, one of which was in Alabama, and the other which was aboard Camp Lejeune. *Id.* ¶ 14. Navy Federal Credit Union was listed as a lienholder. *Id.* ¶ 13. As noted by the government in the Complaint, a non-service member may receive a loan from Navy Federal Credit Union. *Id.*

In August 2021, Cpl Chancellor's mother received the DMV letter at the Alabama address. *Id.* ¶¶ 14, 18. The letter stated that Goines Towing had the FJ Cruiser, was claiming a lien for unpaid storage fees, and intended to sale it. *Id.* ¶ 18.

Six months after the FJ Cruiser was towed, Cpl Chancellor allegedly called Goines Towing. *Id.* ¶¶ 17, 19. According to the Complaint, Cpl Chancellor identified himself as a member of the Marines, but there are no allegations he provided any proof of identification or his military status. *Id.* ¶ 19. There is no allegation that he provided a date of birth or social security number, which are required to obtain military status information from the DoD website. *See id.* Goines Towing agreed to

release the vehicle if the fees were paid in cash. *Id.* It also informed Cpl Chancellor that it would sell the vehicle if it was not retrieved and the fees paid. *Id.*

There are no allegations in the Complaint that Cpl Chancellor paid the fees or made any more contact with Goines Towing prior to October 26, 2021. On October 26, 2021, <u>more than eight months</u> after the vehicle was towed, Goines Towing filed suit seeking an order to sell the FJ Cruiser and recover the unpaid fees. *Id.* ¶¶ 16, 18, 20; *see also* Exhibit D, FJ Cruiser Court Documents.[7] As part of that suit, one of Goines Towing's agents also filed a SCRA affidavit. Compl. ¶ 21; *see also* Exhibit D. That affidavit noted that the individual was "unable to determine whether the defendant named above is in military service." Exhibit D; Compl. ¶ 21. The affidavit also indicated that the DoD database had not been consulted and provided the following remark: "I DO NOT HAVE REQUIRED SOCIAL SECURITY NUMBER TO USE THIS SITE[.]" Exhibit D.

***The same day*** that the petition and affidavit were filed, the Onslow County Clerk of Court issued an order authorizing the public sale of the FJ Cruiser. *Id.* ¶¶ 21–22; Exhibit D. In fact, according to the court's file stamps, the petition for sale

---

[7] This Motion is submitted under Federal Rule of Civil Procedure 12 (b)(6). The Court may properly consider Exhibit D under Rule 12(b)(6) on two grounds. First, the Court may consider the exhibit because it is "attached to the motion to dismiss, . . . integral to the complaint[,] and authentic . . . ." *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Second, the court may consider Exhibit D because it contains documents that were filed with the Onslow County Superior Court and are part of the public record. *See id.*; *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *see also Fusaro v. Cogan*, 930 F.3d 241, 245 n.1 (4th Cir. 2019) (taking judicial notice of filed court documents).

was filed at 11:33 on October 26, and the order for sale was issued by the court three minutes later at 11:36. *See* Exhibit D, at 1, 4.

Despite having the state court's immediate permission to sell the vehicle, the sale did not actually occur until late November 2021 for much less than the claimed fees. *Id.* ¶¶ 18, 24. According to the Complaint, Cpl Chancellor did not call again about his vehicle until December 1, 2021, after the vehicle was sold.

**B.  Ford F-350**

In 2020, Goines Towing towed a 2001 Ford F350[8] (the "F350") from Marine Corps Air Station New River. *Id.* ¶ 30. The registered address for the F350 was on base. *Id.*

After the F350 went unclaimed, Goines Towing filed a SCRA affidavit and a petition for sale of the vehicle in Onslow County Superior Court on Friday, August 28, 2020. *Id.* The court issued an order authorizing sale shortly thereafter. *Id.* As with the FJ Cruiser, the court was provided a SCRA affidavit stating that Goines Towing was unable to determine if the defendant was in military service. *Id.* There are no allegations the court took any protective measures authorized by SCRA. *See id.*

**C.  Chevy Silverado**

In 2019, Goines Towing towed a 1995 Chevy Silverado (the "Silverado") from Camp Lejeune. *Id.* ¶ 31. The Complaint once again makes allegations regarding the contents of the vehicle while omitting allegations about whether a Goines Towing

---

[8] The Complaint alleges the truck was a model F250, but Goines Towing believes it was, in fact, an F350.

representative did or could inspect the vehicle's interior. *See id.* As with the other vehicles, Goines Towing petitioned to sell the Silverado after it went unclaimed. *Id.* In support of that petition, Goines Towing filed a SCRA affidavit stating it was unable to determine whether the defendant was in military service. *Id.*

## D. Honda Civic

The fourth and final vehicle mentioned in the Complaint is a 1999 Honda Civic (the "Civic"). *Id.* ¶ 32. When the Civic went unclaimed, Goines Towing petitioned the Court for its sale. *Id.* On December 18, 2019, Goines Towing filed a SCRA affidavit and petition for sale. *Id.* The SCRA affidavit stated that Goines Towing was unable to determine whether the defendant was in military service. *Id.*

## STANDARD OF REVIEW

A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. When assessing the plausibility of a complaint under Rule 12(b)(6), "'mere conclusory and speculative allegations' are insufficient, and a court 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Brown v. Walmart*, No. 1:20CV59, 2022 WL 295708, at

*1 (M.D.N.C. Feb. 1, 2022) (quoting *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 548 (4th Cir. 2013)).

Additionally, a complaint that "fails to identify a cognizable legal theory cannot survive application of this standard" either. *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir. 2020); *Fresenius Med. Care Holdings, Inc. v. Town of Lillington*, 339 F. Supp. 3d 557, 559 (E.D.N.C. 2018); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## <u>ARGUMENT</u>

The Complaint should be dismissed because the government has manufactured a standard of care that does not exist in SCRA and then falsely accuses Goines Towing of failing to file or filing inaccurate SCRA affidavits. Though the Government's own Complaint alleges that SCRA affidavits were actually filed, the government appears to really allege that Goines Towing was required to "use due diligence in completing the affidavit by making a good faith effort to ascertain a defendant's military service status." Compl. ¶ 2. There is no binding legal support for this standard of care. To the extent any showing of good faith effort is required, the Complaint's allegations demonstrate that Goines Towing complied with the statutory language of SCRA and followed North Carolina law. For that reason, the Complaint should be dismissed.

# I. SCRA PERMITS GOINES TOWING TO STATE IT IS UNABLE TO DETERMINE MILITARY STATUS.

## A. SCRA does not define, suggest, or imply a standard of care or what constitutes a "good faith" effort.

Because 50 U.S.C. § 3931(b) ("Section 3931(b)") is unambiguous, this case starts and ends with the language of the statute itself. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with the language of the statute."); *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003). "Clear language leaves no room for policy argument. The rules are applicable, or they are not. A legal argument predicated on the theory that the rules do not mean what they say is destined to fail." *Durm v. Am. Honda Fin. Corp.*, No. CIV. WDQ-13-0223, 2013 WL 6490309, at *3 (D. Md. Dec. 9, 2013) (discussing SCRA claims in separate context).

Section 3931(b) lays out the protections available to Servicemembers in default judgment proceedings. It states that:

> In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—
>
> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or
>
> (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. § 3931(b)(1).

SCRA expressly permits a plaintiff (or also referred to as "affiant") to state that it is "unable to determine whether or not the defendant is in military service . . . ." *Id.*

Case 7:23-cv-00188-BO-KS   Document 13   Filed 05/02/23   Page 12 of 23

§ 3931(b)(1)(B). SCRA does not define "unable," nor does it lay out any required investigative steps a plaintiff must take before making that declaration. *See id.* §§ 3911 (SCRA definitions); 3931 (affidavit procedures). This plain language is why several courts have noted, without analysis, comment, or explanation, that an affiant can fulfill their obligations under SCRA by stating they are unable to determine the military status of the defendant. *Platter v. G Force Cement Works, L.L.C.*, No. CV H-19-2012, 2020 WL 1308171, at *2 (S.D. Tex. Mar. 16, 2020); *Gerber Life Ins. Co. v. Garcia*, No. A-18-CV-535-RP, 2019 WL 3816291, at *4 (W.D. Tex. May 14, 2019), *report and recommendation adopted*, No. 1:18-CV-535-RP, 2019 WL 3816282 (W.D. Tex. June 14, 2019); *Am. Auto. Ass'n, Inc. v. Zaid*, No. CV144040RSWLRZX, 2015 WL 13648580, at *1 (C.D. Cal. Apr. 13, 2015) ("Plaintiff may, and did, comply with the local rules by submitting an affidavit 'stating that the plaintiff is unable to determine whether or not the defendant is in military service.'" (quoting 50 U.S.C. Appx § 521(b)(1)(B))); *High Tech Pet Prod., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, No. 6:14-CV-759-ORL-22, 2015 WL 926048, at *3 (M.D. Fla. Feb. 12, 2015), *report and recommendation adopted*, No. 6:14-CV-759-ORL-22TB, 2015 WL 926023 (M.D. Fla. Mar. 4, 2015) ("Plaintiff's response stating that Plaintiff was not able to ascertain Defendant's military status satisfies the affidavit requirement in the SCRA."); *Mountain 1st Bank & Tr. v. Spencer*, No. 7:11-CV-01433-GRA, 2011 WL 13220340, at *1 (D.S.C. July 28, 2011) ("Alternatively, if the plaintiff is without sufficient information to determine whether the defendant is in military service, the affidavit should state that the plaintiff is unable to make such a determination."). The

language of the statute is plain and unambiguous, ending the inquiry. *See Barnhart*, 534 U.S. at 450.

Though no further inquiry by this Court is necessary, Goines Towing respectfully notes that SCRA's structure and context also support that conclusion. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, __ U.S. __, __, 139 S. Ct. 1881, 1888 (2019) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U. S. 93, 101 (2012)). ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") Part of that context is the inclusion of terms in one part of a statute but not others, because courts "generally presume that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, __ U.S. __, __, 140 S. Ct. 768, 777 (2020) (internal quotations and alterations omitted).

The only duty to investigate found in Section 3931 is in subsection (b) and exists when the affiant is affirmatively stating that he believes the defendant is or is not in military service. *See* 50 U.S.C. § 3931(b)(1)(A). If making such a representation to a court, the plaintiff must provide "necessary facts to support the affidavit[.]" *Id.* By contrast, the need for these facts is notably, and understandably, absent from Section 3931(b)(1)(B). Congress's decision to require facts for Section 3931(b)(1)(A) but not Section 3931(b)(1)(B) is common sense. It would be nonsensical to provide facts to demonstrate an unknown. *See Metro. Life Ins. Co. v. Sutherlin*, No. 1:21-CV-11609, 2022 WL 866300, at *2 (E.D. Mich. Jan. 4, 2022), *report and recommendation adopted*, No. 1:21-CV-11609, 2022 WL 856392 (E.D. Mich. Mar. 22, 2022), *and report*

*and recommendation adopted*, No. 1:21-CV-11609, 2022 WL 967702 (E.D. Mich. Mar. 28, 2022) ("The affidavit must contain all facts that are 'necessary' to support it. 50 U.S.C. § 3931(b)(1)(A). If, however, the plaintiff cannot determine that the defendant is in military service, then the plaintiff must file an affidavit stating this fact. *Id.* § 3931(b)(1)(B)."). This contrast in proof requirements shows that no duty to investigate exists when the affiant is admitting it is unable to determine the military service of the defendant.

The other provisions in Section 3931 also support the conclusion that no heightened duty exists. While SCRA's "unable to determine" option may unfairly seem like an easy out for affiants that leaves servicemembers exposed, such is not the case. In situations where an affiant states they are unable to determine the military status of a defendant, the statute provides defendants with additional protections which are to be given by the court—not the affiant, in this case Goines Towing. *See supra* Relevant Background, Section II, at 5–6.

Still, the Complaint alleges that Goines Towing should have done the following before declaring that it was unable to determine whether or not the defendant is in military service:

- Rummage through the interior of all vehicles and handle the owners' personal belongings, Compl. ¶¶ 28, 31;
- Contact all lienholders, separate from the NC DMV notification letter sent by the state by statute, to inquire into personal details about the vehicle's owner, *id.* ¶ 28;
- Research the origins of any military paraphernalia and then contact potential owning/issuing units on Camp Lejeune to further investigate an owner's military status, *id.* ¶¶ 27–28, 31; <u>and</u>,
- Find a social security number which is not typically accessible to the public, *see id.* ¶¶ 21, 30–32.

It seems the government wanted Goines Towing to conclusively establish that the evidence about a vehicle owner's status was inconclusive.

Yet, these steps are not mentioned in any law or federal regulation—not even by the U.S. Departments of Justice or Defense. Even the U.S. Department of Justice's ("DOJ") online guidance does not require or even mention these steps. *See Financial and Housing Rights: Protection in Default Judgments*, Servicemembers and Veterans Initiative, U.S. Dep't of Just., https://www.justice.gov/servicemembers/topics#consumer (last visited April 26, 2023). Rather, DOJ appears to impose this so-called "good faith" in its public guidance to servicemembers that adds "good faith" to the "unable to determine" choice when listing the three options available to affiants. *See id.* While this may be the DOJ's desired hope for the law, its interpretation is not rooted in SCRA itself, nor does this guidance provide any examples of what the government thinks a "good faith" investigation entails.

In sum, Section 3931's plain language makes clear three points: (1) an affiant can attest that they are unable to determine the military service of a defendant; (2) it is then the court's responsibility to provide additional protections, if needed; and (3) a judgement can be vacated for servicemembers if these mechanisms fail. The statutory context and scheme also support these conclusions.

What SCRA does not require is <u>any</u> level of investigation by the affiant when putting a court on notice that the affiant does not know if a defendant is active military. The DOJ may not like the state of the law, but that does not mean it can unfairly single out and sue Goines Towing due to its displeasure. It is the job of the

U.S. Congress or federal regulators to fix this issue—a lawsuit against Goines Towing is not the way to revise SCRA. As stated by the U.S. Supreme Court in *Bostock v. Clayton Cnty.*:

> After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations.

__ U.S. __, __, 140 S. Ct. 1731, 1738 (2020).

**B.    Case law also does not impose a duty of investigation under Section 3931(b)(1)(B).**

There also does not appear to be any binding case law imposing the duty to investigate. In fact, one other court dealing with a similar SCRA provision declined to impose additional, "good faith" burdens on a bank that refused to renegotiate loan terms with a servicemember. *Koenig v. Waukesha State Bank*, No. 05-C-255, 2006 WL 2334841, at *5 (E.D. Wis. Aug. 10, 2006). In that case, a servicemember argued that the bank he used for his personal business violated SCRA "by arbitrarily refusing reasonable settlement offers." *Id.* That court granted the bank's motion for summary judgment based "upon a plain reading of the statute," which did not provide the relief that the plaintiff sought. *Id.* at *6. The court found that the plaintiff in that case, in making his good faith argument, provided "absolutely no citations to support his assertion that creditors are required to enter into good faith negotiations to provide for a payment plan that will permit the rehabilitation of the person who has served

his country and ultimately provide full payment on the obligation of the creditor." *Id.* at *5 (internal quotations and alterations omitted). As *Koenig* indicates, though SCRA should be read broadly to protect those who protect our nation, *Boone v. Lightner*, 319 U.S. 561, 575 (1943), it does not give courts the power to write in provisions that simply do not exist, *Koenig*, 2006 WL 2334841, at *3, *5.[9]

## II. GOINES TOWING'S COMPLIANCE WITH NORTH CAROLINA LAW SHOWS ITS GOOD FAITH.

To the extent Goines Towing was required to show some level of good faith investigation or diligence, its compliance with state law is proof enough. *See* 50 U.S.C. § 3958(a)(1) (stating that a court order is required under SCRA to enforce a storage lien). Indeed, the failure by other wrecker operators sued by the government to pursue the sale of a vehicle through the courts has earned rightful condemnation. *See, e.g.*, *United States v. B.C. Enterprises, Inc.*, No. 2:08CV590, 2010 WL 11699777, at *1 (E.D. Va. Feb. 19, 2010) (discussing suit involving defendant who allegedly sold servicemember vehicles without a court order). Goines Towing is not like those operators—it followed state law in pursuing its court-ordered sales. And, the government does not contend otherwise in its Complaint.

---

[9] The few cases that infer a possible duty to investigate into Section 3931(b)(1)(B) are nonbinding, distinguishable, and lack any statutory or regulatory support for their conclusion, such as *Merrill v. Beard*. Case No. 5:05CV768, 2007 WL 461469, at *1 (N.D. Ohio Feb. 7, 2007). The small cluster of cases to reach the same conclusion have cited *Merrill* or likewise provide no statutory or regulatory support. *See, e.g.*, *Chanel, Inc. v. Adeyemi*, No. CV-08-1269-PHX-ROS, 2009 WL 2590640, at *1 (D. Ariz. Aug. 21, 2009); *In re C.K.*, No. 12-1279, 2013 WL 5788570, at *3 (W. Va. Oct. 28, 2013); *229 West 113th Street, UHAB HDFC v. Lamb*, No. 59150/2015, 2015 WL 4773218, at *2 (N.Y. City Civ. Ct. Aug. 10, 2015). These cases also do not provide any guidance as to what steps an affiant should have taken to fulfill any alleged duty.

**A.    There is nothing illegal in petitioning a North Carolina court to order the sale of an unclaimed vehicle with an existing storage lien.**

The procedure by which a wrecker operator can sell an unclaimed vehicle involves two different processes. One involves notification to the DMV. The other involves the process of claiming a lien on the vehicle and petitioning for its sale.

As to the first process, after a vehicle is recovered by a wrecker operator, it is required by law to notify the DMV. N.C. Gen. Stat. §§ 20-114(c); 44A-4(b)(1). The notice must be given at least twenty (20) days before the sale. N.C. Gen. Stat. § 20-114(c). According to the DMV website, an operator first files a form LT-260.[10] In response, the DMV then sends the operator a letter known as an LT-160B. *See* Unclaimed Vehicles. This letter authorizes the operator to then submit an LT-262, Notice of Intent to Sale. *Id.* During this process, the DMV provides notice sent to the address(es) of the registered owner and the address of any lienholder. *See* Compl. ¶ 18. At this point, the operator has satisfied the DMV notification process.

The second process is the enforcement of the storage lien and sale of the vehicle. Towing operators are entitled to a storage lien for their services:

> Any person who . . . tows[] or stores motor vehicles in the ordinary course of the person's business pursuant to an express or implied contract with an owner or legal possessor of the motor vehicle . . . has a lien upon the motor vehicle for reasonable charges for such repairs, servicing, towing, storing . . . . This lien shall have priority over perfected and unperfected security interests.

---

[10] *Submit a LT260 Report of Unclaimed Vehicles Form, Connect NCDOT*, N.C. Dep't of Transp., https://connect.ncdot.gov/business/DMV/Pages/LT260.aspx (last visited April 26, 2023) [hereinafter "Unclaimed Vehicles"].

N.C. Gen. Stat. § 44A-2(d); *see also Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 2022-NCCOA-342, ¶ 30, 283 N.C. App. 446, 453, 873 S.E.2d 62, 67. In order to recover fees under that lien, the operator petitions their local court to order the sale of the vehicle. *See Bottoms Towing*, 2022-NCCOA-342, ¶ 29, 283 N.C. App. at 453, 873 S.E.2d at 67 (discussing process); Ex. B (Form AOC-SP-905). This is the petition that is filed in conjunction with the SCRA affidavit. *See* Ex. A. If those two documents are filed, the Court may then issue an order directing the sale of the vehicle. *See* Exhibit C. Once the sale order is issued, the operator may sell the vehicle.

## B. The Complaint makes clear that Goines Towing complied with North Carolina Law.

The government does not allege that Goines Towing failed to comply with this process at any step. Indeed, the Complaint, and the public records the government refers to in the Complaint, make clear that Goines Towing followed state law and sold each of the four vehicles pursuant to a lawful court order.

As evidenced by the public records attached to this Motion, the FJ Cruiser was sold under this process. *See* Exhibit D. The F350 was sold under this process, just like the FJ Cruiser. Compl. ¶ 30. The Civic was sold under this process, just like the FJ Cruiser. *Id.* ¶ 32. And, finally, the Silverado was sold under the same process as the others. *Id.* ¶ 31.

Under SCRA, the state court had the option to make Goines Towing post a bond or issue other orders it determined were necessary. The state court chose not to do so. Goines Towing should not be found civilly liable because the court chose not to exercise the power SCRA gave it. Goines Towing followed state law in selling the four

vehicles. In each instance, the state court issued orders authorizing the sale of the vehicles. Compliance with this intricate state system demonstrates Goines Towing's good faith and undermines any inference to the contrary.

## CONCLUSION

The government has alleged in its Complaint a standard of care that is above and beyond what is required by law. Simultaneously, the Complaint's allegations also show that Goines Towing followed the existing requirements of SCRA and North Carolina state law. For these reasons and others stated above, Defendant's Motion to Dismiss should be Granted and the Complaint dismissed with prejudice.

Respectfully submitted, this 2nd day of May, 2023.

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.


/s/ Shana L. Fulton
Shana L. Fulton
  N.C. State Bar No. 27836
sfulton@brookspierce.com
William O. Walker IV
  N.C. State Bar No. 55200
wwalker@brookspierce.com
Christopher B. Dodd
  N.C. State Bar No. 59294
cdodd@brookspierce.com
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
Telephone: (919) 573-6204
Fax: (336) 232-9104
*Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits established in Local Civil Rule 7.2(f). Specifically, the document contains 5,690 words, as counted in compliance with Local Civil Rule 7.2(f)(1).

/s/ *Shana L. Fulton*
Shana L. Fulton

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-188-BO-KS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BILLY JOE GOINES d/b/a GOINES
TOWING & RECOVERY,

        Defendant.

**CERTIFICATE OF SERVICE**

       I hereby certify that the foregoing document was served on the following parties via CM/ECF:

**Chelsea W. Draper**
**Christopher M. Anderson**
United States Attorney's Office - EDNC
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601

**Tanya I. Kirwan**
Department of Justice – Civil Rights Division
Housing and Civil Enforcement Section
4 Constitution Square
150 M Street, N.E., Suite 8.125
Washington, D.C. 20530

Respectfully submitted, this the 2nd day of May, 2023.

/s/ Shana L. Fulton