IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-188-BO-KS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO |
| BILLY JOE GOINES d/b/a GOINES TOWING & | ) | DISMISS |
| RECOVERY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On May 2, 2023, the Defendant, Billy Joe Goines d/b/a Goines Towing & Recovery ("Goines"), filed a Motion to Dismiss the Complaint and Brief in Support. Mot. to Dismiss, ECF No. 12; Br. In Supp. of Mot. to Dismiss 2, ECF No. 13 (Goines Mot.). The Court should deny Goines's Motion because the United States' Complaint satisfies the pleading requirements of Fed. R. Civ. P. 8(a)(2) by alleging that Goines has engaged in a pattern or practice of violating the Servicemembers Civil Relief Act ("SCRA"). Because this is not a case alleging fraud or mistake by Goines, Rule 9's heightened pleading standard requiring "particularity" is inapplicable. *See* Fed. R. Civ. P. 9(b).

In addition, under the plain language of Section 3931(b)(1)(B) of the SCRA, 50 U.S.C. § 3931(b)(1)(B), Goines is required to file a military affidavit when seeking to sell, auction, or otherwise dispose of vehicles in its possession, and is permitted to file an affidavit stating that it is "unable to determine" a defendant's military service status only when it actually is unable to determine that status. Existing caselaw recognizes that prospective state-court plaintiffs like Goines have a duty under the SCRA to investigate a potential defendant's military service status

1

before proceeding in state court.  Finally, Goines's compliance or lack of compliance with state law and a different section of the SCRA do not insulate it from liability in this case.  For these reasons, the United States respectfully requests that the Court deny Goines's Motion.

## I.      PROCEDURAL HISTORY

On March 3, 2023, the United States filed this lawsuit alleging that, since at least February 28, 2017, Goines engaged in a pattern or practice of violating Section 3931(b)(1) of the SCRA, 50 U.S.C. § 3931(b)(1), by failing to file, and filing inaccurate, military affidavits in default judgment proceedings it brought against SCRA-protected servicemembers whose vehicles Goines auctioned off, disposed of, or sold.  Compl. ¶¶  2, 29, 34; *see also* 50 U.S.C. § 4041(a)(1) (discussing the Attorney General's authority to enforce the SCRA where there exists a pattern or practice of violations).  The United States further alleges that these SCRA violations raise an issue of significant public importance.  Compl. ¶ 35; *see also* 50 U.S.C. § 4041(a)(2) (discussing the Attorney General's authority to enforce the SCRA where there is a violation of the SCRA that "raises an issue of significant public importance").  The United States' Complaint seeks: 1) to enjoin Goines from engaging in future violations of the SCRA; 2) appropriate monetary damages for all of the victims of Goines's SCRA violations; 3) a civil penalty; and 4) any additional relief that the Court deems appropriate.  Compl., Prayer for Relief ¶¶ 2-4.  On May 2, 2023, Goines filed its Motion to Dismiss and Brief in Support.  Mot. to Dismiss, ECF No. 12; Goines Mot. 1-23.

## II.     THE SCRA'S AFFIDAVIT REQUIREMENT

The United States alleges that Goines both failed to file, and filed inaccurate, military affidavits in default judgment proceedings it brought against SCRA-protected servicemembers. Compl. ¶¶ 29, 34-35.  In such default judgment proceedings, Section 3931(b)(1) of the SCRA

2

requires the plaintiff to file an accurate affidavit with the court stating one of three things: 1) that the defendant is in military service; 2) that the defendant is not in military service; or 3) that the plaintiff cannot determine whether or not the defendant is in military service.  50 U.S.C. § 3931(b)(1); *see also* Compl. ¶¶ 2, 33.  A plaintiff may file the third type of military affidavit only "if the plaintiff is unable to determine whether or not the defendant is in military service . . .."  50 U.S.C. § 3931(b)(1)(B).

### III.  STATEMENT OF FACTS

#### A.  Goines Towing & Recovery

Goines owns Goines Towing & Recovery, a towing and repossession business that operates in and around Jacksonville, North Carolina.  Compl. ¶¶ 7-10.  Goines tows vehicles from United States Marine Corps Base Camp Lejeune ("Camp Lejeune"), a military installation that includes Marine Corps Air Station New River ("MCAS New River") and has a population of almost 40,000 active duty military members.  *Id.* ¶¶ 7-8, 30-32; *see also* Goines Mot. 2.  One in three residents of Jacksonville who does not live at Camp Lejeune is also an active duty servicemember.  Compl. ¶ 10.

The United States' Complaint alleges that Goines failed to file, and filed inaccurate, military affidavits in default judgment proceedings against SCRA-protected servicemembers, in violation of Section 3931(b)(1) of the SCRA.  Compl. ¶¶ 29, 34-35.  Paragraphs 11 through 28 of the United States' Complaint detail Goines's SCRA violations involving Corporal (Cpl) Cameron M. Chancellor, a full-time active duty member of the United States Marine Corps.  *Id.* ¶¶ 11-28.  Paragraph 29 of the Complaint alleges that there are multiple other victims.  *Id.* ¶ 29.

Paragraphs 30 through 32 of the Complaint summarize three examples of these multiple other servicemember victims.[1] *Id.* ¶¶ 30-32.

### B. Cpl Cameron M. Chancellor

In February 2021, Cpl Chancellor deployed to Japan with his military unit. Compl. ¶ 11. During that same month, Goines towed his 2007 Toyota FJ Cruiser. *Id.* ¶ 17. Cpl Chancellor did not learn that his vehicle had been towed until after his mother received a letter addressed to him in about August 2021, stating that Goines had towed the vehicle and was intending to sell it. *Id.* ¶¶ 18-19. Upon learning of the letter from his mother, and prior to Goines filing a civil action against him, Cpl Chancellor called Goines. *Id.* ¶ 19. During this call, Cpl Chancellor told an agent or employee of Goines that he was an active duty servicemember. *Id.* The agent or employee of Goines did not ask any questions about Cpl Chancellor's active duty military service status or ask for proof of that military service. *See id.* Instead, Goines's agent or employee told Cpl Chancellor that in order to get his 2007 Toyota FJ Cruiser back, he would have to pay cash, even though he was stationed in Japan and his family was in Alabama. *Id.*

On October 26, 2021, Goines filed a military affidavit with the Superior Court Division of the Onslow County General Court of Justice ("Onslow Superior Court") stating that it was "unable to determine" whether Cpl Chancellor was in military service. Compl. ¶ 21. This,

---

[1] Defendant mistakenly contends that only "four vehicles . . . are the subject of the government's Complaint." Goines Mot. 2; *accord* Goines Mot. 6, 20-21. The United States' Complaint includes the phrases, "[f]or example," "[i]n another example," and "[i]n a third example," to make clear that the violations of the SCRA detailed in the Complaint do not represent every incident related to Goines's pattern and practice of violating the SCRA. Compl. ¶¶ 30-32. "At the initial, 'liability' stage of a pattern-or-practice [SCRA] suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim . . .." *International Bhd. of Teamsters v. United* States, 431 U.S. 324, 360 (1977) (quoted in *United States v. COPOCO Cmty. Credit Union*, No. 16-12756, 2017 WL 57236, at *3 (E.D. Mich. Jan. 5, 2017)).

despite that Cpl Chancellor had, by telephone, previously informed Goines that he "was an active duty Marine deployed to Japan," and despite additional evidence that Cpl Chancellor was in military service. *Id.* ¶¶ 12-15, 19, 28. As alleged in the complaint, Cpl Chancellor's 2007 Toyota FJ Cruiser: 1) was registered and titled in North Carolina under two addresses, one of which was "Camp Lejeune"; 2) had a Marines decal on the rear passenger's side window; 3) had a military patch on the ceiling of the interior that listed Cpl Chancellor's name, military identification number, and military unit at Camp Lejeune; 4) had approximately 15 other military patches velcroed to the ceiling of the interior; 5) contained photographs of Cpl Chancellor and other military members in uniform in the center console; and 6) was financed through Navy Federal Credit Union ("NFCU"), where borrowers or one of their family or household members must have ties to the armed forces, the Department of Defense, or the National Guard.[2] *Id.* ¶¶ 12-15, 28.

### C. Examples of other SCRA violations listed in Complaint

The other three examples of Goines' SCRA violations included in the Complaint also demonstrate that Goines was not "unable" to determine military statuses. Rather, it was unwilling to do so. Compl. ¶¶ 30-32. In the first of these three examples, the vehicle, a 2001 Ford F250,[3] was towed from a parking space outside servicemember housing at MCAS New River, a part of Camp Lejeune. *Id.* ¶ 30. The address listed for the servicemember in the "unable to determine" military affidavit filed by Goines was "MCAS New River." *Id.* In the second example, the vehicle was also towed from parking outside military housing, this time at

---

[2] Goines was aware that NFCU held a lien on Cpl Chancellor's vehicle because it listed NFCU on the Petition for Authorization to Sell Motor Vehicle Under a Lien, which it filed with the court on October 26, 2021. Goines Mot. Ex. D at 2.
[3] Goines asserts the vehicle at issue was a F350. Goines Mot. 9, n.8. It was, as alleged, a 2001 Ford F250. Compl. ¶ 30.

Camp Lejeune proper, and contained a military uniform and a set of Marine coveralls. *Id.* ¶ 31. In the final example, the vehicle was towed from Camp Lejeune and the owner's address was a post office box at Camp Lejeune. *Id.* ¶ 32. In all three examples, the Complaint lists steps Goines was able to take, but did not take, to verify the military service status of the owners of these three vehicles, including calling MCAS New River or Camp Lejeune. *Id.* ¶¶ 30-32.

## IV.    LEGAL STANDARD FOR MOTION TO DISMISS

"In general, [a] motion [to dismiss] should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Secretary of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss pursuant to Rule 12(b)(6), . . . [the] '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] [its] claims across the line from conceivable to plausible.'" *Vitol v. Primerose Shipping Co., Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013) (brackets in original) (quoting *Twombly*, 550 U.S. at 555, 570). "Nevertheless, a complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Coleman v. Maryland Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010)).

"When ruling on such a motion, 'a judge must accept as true all of the factual allegations contained in the complaint,'" *Coleman,* 626 F.3d at 190 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and construe them in the light most favorable to the plaintiff, *Secretary of State*

*for Def.*, 484 F.3d at 705.  Evaluating the United States' complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## V.    ARGUMENT

The Court should deny Goines's Motion because the United States' Complaint satisfies the requirements of Fed. R. Civ. P. 8(a)(2) and contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As this is not a case alleging fraud or mistake by Goines, Rule 9's heightened pleading standard requiring "particularity" is inapplicable.  *See* Fed. R. Civ. P. 9(b).  While Goines crafts its argument in terms of the four examples of SCRA violations alleged in the United States' Complaint, Goines Mot. 6-10, the Complaint is broader than that, as the facts alleged demonstrate.  Specifically, the United States' Complaint alleges that "[f]rom at least February 28, 2017, through the date . . . of this Complaint, Defendant Goines has auctioned off, sold, or otherwise disposed of motor vehicles and personal effects belonging multiple other SCRA-protected servicemembers after failing to file, or filing inaccurate military affidavits in default judgment proceedings against those servicemembers."  Compl. ¶ 29.  This allegation that over a period of six years Goines both failed to file affidavits and filed inaccurate affidavits is sufficient to "nudge the[] [United States'] claims across the line from conceivable to plausible . . .."  *Twombly*, 550 U.S. at 570.  As a result, and without any further analysis required, the Court should deny Goines's Motion.  Goines's arguments, to which the United States responds below, are all attempts to distract from the central point, which is that the United States has properly pleaded a pattern or practice of SCRA violations.

7

Goines's Motion argues that pursuant to the plain language of the SCRA, it is not required to conduct "<u>any</u> level of investigation . . . when putting a court on notice that [it] does not know if a defendant is active military."  Goines Mot. 16 (emphasis in original).  Contrary to Goines's assertion, it is not permitted to file a military affidavit under Section 3931(b)(1) of the SCRA stating that it is "unable to determine" a defendant's military service status unless, after making an effort, it still is unable to determine that status.  This view is supported by the plain meaning of the statue, as well as by existing caselaw.  Further, while Goines argues that it has complied with state law and a different section of the SCRA, those inquiries are not relevant to the violations alleged in the United States' Complaint, and cannot insulate it from liability in this case.

> ### A. Under the "plain meaning rule," Goines cannot file a military affidavit stating it is unable to determine a defendant's military service status unless it is truly incapable of determining that status.

Goines is correct in stating that the plain meaning rule applies to 50 U.S.C. § 3931(b)(1).  Goines Mot. 12-14.  However, the plain meaning rule supports the United States' claims, as Goines has not met the statute's clear military affidavit requirements.

"The general rule is that unless there is some ambiguity in the language of the statute, a court's analysis must end with the statute's plain language (the Plain Meaning Rule)."  *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001) (citations omitted).  "In interpreting a statute, 'a court should always turn first to one, cardinal canon [of construction] before all others:' the plain meaning rule."  *Ayers v. U.S. Dep't of Veterans* Affairs, 473 F.3d 104, 108 (4th Cir. 2006) (quoted in *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 167 (E.D.N.C. 2008) (additional quotations omitted)).  It is well-established that "[t]he inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  *Barnhart v.*

8

*Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citations omitted).

With respect to the broader context of the SCRA as a whole, the Supreme Court has indicated that "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948) (citing *Boone v. Lightner*, 319 U.S. 561, 575 (1943)). "Congress has long recognized that the men and women of our military services should have civil legal protections so they can 'devote their entire energy to the defense needs of the Nation.'" H.R. Rep. No. 81, 108th Cong. at 32 (2003), *reprinted in* 2004 U.S.C.C.A.N 2367, 2377. Thus, in assessing Section 3931(b)(1) of the SCRA for its plain meaning, one must also consider that the SCRA is intended to provide extensive civil protections to military members to enable them to focus on protecting the freedoms we all enjoy.

Section 3931(b) of the SCRA states:

**(b) Affidavit Requirement**

  **(1) Plaintiff to file affidavit**

      In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—

        (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

        (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. § 3931(b).

First, Goines does not address the clear requirement of Section 3931(b)(1) that it must "file with the court an affidavit" regarding the military status of a defendant when pursuing a default judgment action. *Id.* The United States' Complaint alleges that Goines did not meet this requirement, in that it "*fail[ed] to file*, or fil[ed] inaccurate, military affidavits" over at least a six year period. Compl. ¶ 29 (emphasis added).[4]

Second, Goines tries to sidestep the unambiguous language of 50 U.S.C. § 3931(b)(1)(B) by arguing that the "SCRA does not define 'unable,' nor does it lay out any required investigative steps a plaintiff must take before making that declaration." Goines Mot.13. Goines is correct in that the SCRA does not provide a definition for the word "unable." Similarly, the SCRA does not define words like "plaintiff" or "necessary." That is because these words have everyday, readily known and easy to comprehend definitions. *See, e.g.*, *Fancher v. United States*, Case No. 5:22-CV-315, 2022 WL 17842896, at *4 (E.D.N.C. Dec. 20, 2022) (relying on a dictionary definition of the word "claim" while determining the plain meaning of a portion of the Camp Lejeune Justice Act).

Dictionary definitions of "unable" provide clear guidance to readers of the SCRA. "One is unable to do something if one does not possess the "ability or power[] to do or perform . . . something specified." *Unable Definition*, Oxford English Dictionary, https://www.oed.com/view/Entry/208933?rskey=GNcebm&result=1&isAdvanced=false (last visited May 15, 2023). Mirriam-Webster defines "unable" as meaning "not able" and "incapable." *Unable Definition*, Merriam-Webster, mirriam-webster.com/dictionary/unable (last visited May 5, 2023); *see also*

---

[4] The United States is currently aware of four civil proceedings brought by Goines involving six servicemember defendants where the Onslow Superior Court's case files did not contain any military affidavits.

*Unable Definition*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/ english/unable (last visited May 5, 2023) ("unable" means "not able").

Therefore, in applying the above plain language meanings of the word "unable" to 50 U.S.C. § 3931(b)(1)(B), the statute reads, "If the plaintiff . . . [lacks the ability or power] to determine whether or not the defendant is in military service, then the plaintiff shall file an affidavit stating that the plaintiff is unable to determine whether or not the defendant is in military service." *Id.* In turn, under this plain meaning, Goines was first required to make a sufficient effort to determine the military service status of each and every individual against whom it brought an action seeking a default judgment. Only if Goines truly lacked the ability to determine a military status – not if it merely found doing so inconvenient or time-consuming – was it permitted to file an affidavit stating it was unable to determine a defendant's military service status.

When Goines filed military affidavits in civil actions it brought, *see* Compl. ¶¶ 34-35, Goines was not "unable" to determine anyone's military service status. *See, generally, id.* As alleged in the United States' Complaint, there were numerous indicators available to Goines to suggest that defendants were servicemembers, including instances where Goines towed a vehicle from a military base, *id.* ¶¶ 30-32, and instances where Goines's agents or employees were expressly told by a vehicle owner that he or she was on active duty. *See id.* ¶ 19. Goines failed to follow up on any of this information to determine the military status of any vehicle's owner, as required by the SCRA. *See id.* ¶¶ 25-27, 30-32.

**B.    Goines's interpretation of 50 U.S.C. § 3931(b)(1) triggers both of the two narrow exceptions to the plain meaning rule.**

In the alternative, Goines's interpretation of Section 3931(b)(1) fails under the exceptions to the plain meaning rule. Goines erroneously argues that under the plain meaning of 50 U.S.C.

§ 3931(b)(1) its only legal obligation was, in each civil action it brought seeking a default judgment, to file a military affidavit stating it was unable to tell whether or not the defendant was in military service. Goines Mot. ¶ 13. Restated, as long as Goines filed an affidavit with the court stating that it was unable to tell whether or not the defendant was in military service – regardless of whether or not that was true – it satisfied the requirements of the SCRA. *Id.* Defendant's interpretation is inconsistent with the plain meaning of the SCRA, as explained above. But even if it were not, Goines's purported plain-meaning interpretation of the SCRA would trigger both of the exceptions to the plain meaning rule.

There are "two extremely narrow exceptions to the Plain Meaning Rule." *Hillman*, 263 F.3d at 342. "The first such exception, premised on absurdity, exists 'when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e. that is so gross as to shock the general moral or common sense . . .." *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004) (quoting *Hillman*, 263 F. 3d at 342) (additional citations omitted). The second "exception applies when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary." *Hillman,* 263 F.3d at 342 (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000)).

Goines's proffered interpretation of the SCRA is both "premised on absurdity" and "shock[s] . . . common sense." *In re Sunterra Corp.*, 361 F.3d at 265 (quoting *Hillman*, 263 F. 3d at 342). Goines's interpretation is also contrary to congressional intent. First, it would be absurd to interpret the SCRA to absolve Goines (or anyone else) from liability simply because it filed an affidavit, irrespective of the affidavit's accuracy. As alleged in the Complaint, Goines's affidavits were consistently inaccurate. Compl. ¶¶ 15, 19-21, 28-32. Second, the goal of the

12

SCRA is to provide civil protections to servicemembers so "they can 'devote their entire energy to the defense needs of the Nation[,]'" H.R. Rep. No. 81, 108th Cong. 32 (2003), *as reprinted in* 2004 U.S.C.C.A.N 2367, 2377. Goines's act of filing inaccurate rubber-stamped affidavits stating it was "unable to determine" an individual's military service status without making an actual effort to do so undercuts that goal. *See Campbell v. Hampton Roads Bankshares, Inc.,* 925 F.Supp.2d 800, 808 (E.D. Va. 2013) (citing *United States v. Pressley*, 359 F.3d 347, 350 (4th Cir. 2004)) ("Additionally, the Court must give meaning to every word of the statute, not reading any word out or treating it as surplusage."). Interpreting the "unable to determine" provision to require merely an affidavit (however inaccurate or lacking in due diligence it may be) would effectively write out the other provision of the affidavit requirement, which is counter to canons of statutory construction and cannot be reconciled with Congress' clear intention in enacting this statute.

The SCRA is "part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011). A key purpose of the SCRA "is to prevent default judgments from being entered against members of the armed services in circumstances where they might be unable to appear and defend themselves." *United States v. Kaufman*, 453 F.2d 306, 308-09 (2d Cir. 1971) (discussing the SCRA's predecessor, the Soldiers and Sailors Civil Relief Act ("SSCRA")). Congress' intent in crafting the SCRA was to protect servicemembers against financial and housing hardships resulting from a lack of due process and unscrupulous business owners. Allowing rubber-stamped affidavits with no research, effort, or thought – or even accuracy – behind them would thwart that Congressional intent.

**C.** **Caselaw supports the United States' position that due diligence and a good faith effort to determine a defendant's military service status are required before filing an affidavit under the SCRA.**

Goines argues that SCRA caselaw supports its argument that it is not required to put forth an effort to determine the military service status of a defendant before filing an affidavit with the court stating that it is unable to determine that status. Goines Mot. ¶¶ 13-14. While neither the Supreme Court nor the Fourth Circuit has spoken on this issue, existing caselaw recognizes that plaintiffs have a duty to investigate a defendant's military service status before filing an "unable to determine" military status affidavit.

In *First Acceptance Ins. Co. v. Ramirez*, No. 3:08-cv-01078-J-34JRK, 2009 WL 10671304 (M.D. Fla. July 21, 2009) (unpublished order), the court denied plaintiff's revised motion for a final default judgment as to one defendant because the military affidavit stated only that the plaintiff was unable to determine whether the defendant was in military service. In so doing, the court made it clear that the language of the SCRA "requires an affidavit, supported by factual evidence, *regardless of whether [p]laintiff is able to determine if a defaulting party is in military service.*" *Id.* at *2 (emphasis added). The court went on to state that "[p]laintiff's bald assertion that it is 'unable to determine whether [the] [d]efendant . . . is in military service[,]' is insufficient and does not satisfy the requirements of the SCRA." *Id.* (citation omitted). Likewise, the military affidavits filed by Goines containing only bald assertions that it was "unable to determine" anyone's military service status did not comply with the SCRA.

Contrary to Goines's argument that a military affidavit need not contain any supporting facts, Goines Mot. 17-18, caselaw makes clear that "any affidavit that is filed pursuant to the SCRA must provide facts within that affidavit to support either a conclusion that a party is [or is not] in military service, or the inability to reach such a conclusion." *First Acceptance Ins. Co.,*

14

2009 WL 10671304, at *2; *see also Solis v. J.W. Buckholz Traffic Eng'g, Inc.*, No. 3:11-cv-248-J-34MCR, 2012 WL 13136939, at *3 (M.D. Fla. Nov. 13, 2012).

Goines had an affirmative obligation to describe the steps it took to determine each defendant's military service status. Where a "[p]laintiff is unable to determine whether a defaulting party is in military service, a supporting affidavit must . . . indicat[e] what steps [p]laintiff took in attempting to determine the status of the defaulting party's military service." *Solis,* 2012 WL 13136939, at *3; *First Acceptance Ins. Co.*, 2009 WL 10671304, at *2; *cf. Chanel, Inc. v. Adeyemi*, No. CV-08-1269-PHX-ROS, 2009 WL 2590640, at * 2 (D. Ariz. Aug. 21, 2009) (denying plaintiff's Amended Motion for Final Default Judgment where an affidavit from plaintiff's counsel and an unsworn statement from plaintiff "neither provide[d] facts nor suggest[ed] Plaintiff has made an attempt to determine . . . [the defendant's] status under the SCRA"). As another court stated, "Certainly the importance placed upon protecting members of our military requires counsel to make reasonable, *good faith efforts* to ascertain [a] Defendant's military status." *Merrill v. Beard*, No. 5:05CV768, 2007 WL 461469, at *3 (N.D. Ohio Feb. 7, 2007) (emphasis added). Not only does caselaw make clear that Goines had an obligation to research defendants' military service statuses prior to filing military afffidavits with the Onslow Superior Court, the cases it cites for the proposition that there is no such obligation actually support the United States' position.

### D. The cases cited by Goines support the United States' position and undercut Goines's argument.

The cases cited by Goines support the United States' position that it is not enough merely to state that an affiant is unable to tell whether or not a defendant is in military service. In those cases, for each affidavit filed, the court had evidence of a good faith effort made by the affiant to figure out each defendant's military service status. That is because the SCRA makes clear that

15

an "unable to determine" affidavit is appropriate only where a plaintiff is truly (and truthfully) unable to ascertain whether a defendant is in military service. *See* 50 U.S.C. § 3931(b)(1)(B).

Opposing that conclusion, Goines incorrectly implies that prevailing caselaw allows an affiant to avoid making a good faith effort to determine a defendant's military service status and to file a military affidavit that contains only a conclusory assertion that the affiant is unable to determine whether or not the defendant is in military service. Goines Mot. 13-14. This is simply not true.

The cases Goines cites to the contrary are unpersuasive, for two reasons. Goines Mot. 13-14. First, as Goines concedes, none of those cases are published and none of them provide any "analysis, comment, or explanation" to support the conclusory statements (and often dicta) that Goines has plucked from them. Goines Mot. 13. Second, a deeper review of those cases reveals that none of them stands for this proposition Goines advances. By quoting disembodied statements from the decisions without examining the underlying affidavits themselves, Goines gives the Court a distorted view of the state of the relevant caselaw.

For example, Goines cites *Gerber Life Ins. Co. v. Garcia*, No. A-18-CV-535-RP, 2019 WL 3816291 (W.D. Tex. May 14, 2019), *report and recommendation adopted*, No. 1:18-CV-535-RP, 2019 WL 3816282 (W.D. Tex. June 14, 2019), to support its position that a bare-bones assertion that the affiant is unable to determine whether a defendant is in military service is all that courts require. Goines Mot. 13. However, the underlying military affidavit in that case states that "[a]ttached to the Motion for Default Judgment are the affidavits of Melissa McClure, William Heck, and Jennifer Frank detailing [over the course of over 50 pages] their unsuccessful attempts to locate . . . [Defendant] Garcia or determine his military status." Affidavit in Supp. of Mot. for Default J. ¶ 11, *Gerber Life Ins. Co. v. Garcia*, Case No. 1:18-cv-00535, ECF No. 32-2

(W.D. Tex. Mar. 14, 2019) (Exhibit 1); *see also* Declaration of Jennifer H. Frank, *Gerber Life Ins. Co. v. Garcia,* Case No. 1:18-cv-00535, ECF No. 32-4 (W.D. Tex. Mar. 14, 2019) (Exhibit 2). Those efforts included, but were not limited to, hiring a private investigator, searching Google and multiple databases, calling numerous people with the last name "Garcia," photographing and researching a military plaque for an individual named Daniel Garcia who was killed while in military service, searching casualty records associated with Operation Enduring Freedom, and using process servers to attempt to serve individuals named "Daniel Garcia," on the chance one would possibly be the correct Daniel Garcia. *See* Ex. 1 ¶ 11; *see also generally* Ex. 2. Only after all these extensive efforts failed did counsel for the counter-plaintiff state, and the court accept, that the counter-plaintiff was unable to determine the defendant's military service status. *See* Ex. 1 ¶ 11; *see also Gerber Life Ins. Co. v. Garcia*, 2019 WL 3816291, at *4. This stands in sharp contrast to the absence of efforts by Goines to ascertain the military service status of Cpl Chancellor and the other aggrieved servicemembers who exemplify the United States' pattern or practice claim. Compl. ¶¶ 30-32.

Next, in *High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, No. 6:14-CV-759-ORL-22, 2015 WL 926048, at *3 (M.D. Fla. Feb. 12, 2015), Goines Mot. 13, plaintiff's counsel explained that the individual defendant "appears to be a citizen of the People's Republic of China" who "was listed as the sales manager of . . . [the corporate defendant] in China," was mailed pleadings to a Chinese address, and had an email address associated with the corporate defendant in China. Response to Court's Order at D.E. 51 and Req. for Extension to Provide Court with Non-Military Certificates at 1-2, *High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, No. 6:14-cv-759-ORL-22TBS, ECF No. 52 (M.D. Fla. Feb. 11, 2015) (Exhibit 3). Despite these facts, which the court stated made it "highly unlikely . . . that . . . [the

17

defendant] . . . is actually a member of the United States military," *High Tech Pet Prods., Inc.,* 2015 WL 926048, at *3, plaintiff's counsel "sent written requests to" the Army, Navy, Air Force, and Marine Corps requesting the current military status of the individual defendant.  Ex. 3 at 1, 5.

In *Platter v. G Force Cement Works, L.L.C.*, No. 4:19-cv-2012, 2020 WL 1308171 (S.D. Tex. Mar. 16, 2020), Goines Mot. 13, the underlying default judgment motion states as part of the "undisputed facts" that during the events at issue, the individual defendant "actively ran the business [in Texas] of [the corporate] Defendant . . . on a day-to-day basis . . . [and was the plaintiff's employer]."  Renewed Mot. for Entry of Default Final J. and Incorporated Mem. of Law ¶ 6, 12, 14, *Platter v. G Force Cement Works, L.L.C.*, No. 4:19-cv-2012, ECF. No. 13 (S.D. Tex. Nov. 26, 2019) (Exhibit 4).  If an individual is acting as a Texas employer and is running a Texas business from Texas on a day-to-day basis, he likely is not an active duty member of the military.

Goines also cites to *Mountain 1st Bank & Tr. v. Spencer*, No. 7:11-CV-01433-GRA, 2011 WL 13220340 (D.S.C. July 28, 2011), Goines Mot. 13, where the court, in *dicta*, stated that where "the plaintiff *is without sufficient information to determine* whether the defendant is in military service," then, under those conditions, the plaintiff may file an affidavit stating they are unable to make such a determination.  *Id.* at *1 (citing to 50 U.S.C. App. § 521(b)(1)(B)) (emphasis added).[5]  The court then proceeded to deny the plaintiff's motion for summary judgment because the plaintiff had failed to file any military affidavits at all.

---

[5] On December 1, 2015, the Office of Law Revision Counsel of the United States House of Representatives made an  editorial reclassification to the United States Code that resulted in the SCRA being fully recodified and moved from the Appendix to the United States Code, to the Code, itself.  Thus, what the court cited to in 2011 as 50 U.S. App. § 521, is today cited to as 50 U.S.C. § 3931.

Finally, Goines cites to *American Auto. Ass'n, Inc. v. Zaid*, No. CV 14-4040-RDWL(RZx), 2015 WL 13648580 (C.D. Cal. Apr. 13, 2015). Goines Mot. 13. In that case, the underlying military affidavit, in addition to listing efforts to determine the defendant's military service status, states that "[n]o information to indicate that Defendant is an active duty servicemember, reservist or member of the National Guard is known to me." Decl. of Sarah J. O'Connell in Supp. of Unopposed Mot. for Default J. and Relief ¶ 6, *American Auto. Ass'n, Inc. v. Zaid*, Case No. 2:14-cv-04040-RSWL-RZx, ECF 40-4 (C.D. Cal. Dec. 23. 2014) (Exhibit 5). This is vastly different from the information Goines had to indicate, for example, that Cpl Chancellor was in military service – including that Cpl Chancellor directly reported this fact to a Goines agent or employee. Compl. ¶¶ 11-28. [6]

The central question here is whether an affiant must make a good faith effort to determine a defendant's military status before affirming under penalty of perjury that it is unable to do so. Even the cases cited by Goines in support of its Motion make clear that the answer to that question is yes.

### E. Goines could have identified defendants' military service statuses without Social Security Numbers

Goines argues that it was unable – had no ability – to use the Department of Defense's Defense Manpower Data Center Database ("DMDC")[7] to check for periods of military service associated with vehicle owners because it did not have Social Security Numbers for the vehicle

---

[6] Goines also cites to *Koenig v. Waukesha State Bank*, No. 05-C-255, 2006 WL 2334841, at *5 (E.D. Wis. Aug. 10, 2006), Goines Mot. 17 (granting bank's motion for summary judgment because the SCRA does not contain any language requiring creditors to enter into negotiations with borrowers to establish loan repayment plans and "Koenig provides absolutely no citations to support his assertion" to the contrary). Here, the SCRA contains plain language setting forth Goines's obligations under the SCRA and the United States has provided ample caselaw supporting its position. *See supra* at 8-19.

[7] The DMDC is a free, publicly available database found at https://scra.dmdc.osd.mil/.

Case 7:23-cv-00188-BO-KS   Document 14   Filed 05/23/23   Page 19 of 25

owners. Goines Mot. 8,15; *see, also* Compl. ¶¶ 21, 31. However, as Goines acknowledges, either a Social Security Number or a date of birth may be used to verify an individual's military service status using the DMDC. Goines Mot. 7. There are multiple inexpensive, commercially available databases that can be used by a towing company to match a Vehicle Identification Number ("VIN") – easily found on vehicles[8] – to the vehicle's owner, and then the vehicle's owner to his or her date of birth and/or Social Security Number. *See*, *e.g.*, Transunion-TLOxp, *TLOxp*, https://www. tlo.com/signup (last visited May 8, 2023) (approvals for use contingent upon a satisfactory criminal background check of the primary user). There are also services that provide military status verifications "[e]ven without a Social Security Number or Date of Birth." *See* Military Status Verification & Affidavits, *Servicemembers Civil Relief Act Centralized Verification Service*, https://www.servicememberscivilreliefact.com/ (last visited May 8, 2023). In addition, each branch of the military provides military service verification procedures and points of contact. *See, e.g.,* ASK HRC, *United States Army Human Resources Command*, https://www.hrc.army.mil/ content/Army%20Service%20Center (last visited May 11, 2023); Contact Us, *Air Force's Personnel Center*, https://www.afpc.af.mil/Support/Contact-Us/ (last visited May 11, 2023). These points of contact are also available through the DMDC. *See* User's Guide, *Servicemembers Civil Relief Act (SCRA) Website,* https://scra.dmdc.osd.mil/ (last visited May 8, 2023). Therefore, this argument is without merit.

---

[8] Goines routinely listed VINS in its Onslow Superior Court filings. *See*, *e.g.,* Goines Mot. Ex. D.

### F. Goines's arguments that it complied with North Carolina law and another provision of the SCRA, even if true, are irrelevant and outside the pleadings

Goines argues that the fact that the United States' Complaint does not include any allegations that Goines failed to comply with North Carolina state law means the United States believes Goines always followed state law. Goines Mot. 20-21; *contra* Compl. ¶ 29 (alleging that over a 6-year period, Goines failed to file, or filed inaccurate, military service affidavits, which *does* violate state law).[9] Goines's argument misunderstands its legal responsibilities. It is not enough that Goines comply with state law in its business dealings (which, incidentally, it did not). It must also comply with federal law, including the SCRA.[10]

Goines next appears to blame the Onslow Superior Court for its SCRA violations, arguing that "the state court had the option to make Goines . . . post a bond or issue other orders it determined were necessary[, but] chose not to do so." Goines Mot. 20. Goines's attempt to blame the Onslow Superior Court for the SCRA violations alleged by the United States is also a red herring. *Id.* at 20-21. It is Goines's obligation to file an accurate military affidavit with the

---

[9] As a point of fact, the North Carolina Servicemembers Civil Relief Act specifically "incorporate[s] into State law the rights, benefits, and protections of the federal Servicemembers Civil Relief Act. . .." N.C. Gen. Stat. § 127B-26 (West, Westlaw through S.L. 2022-75 of the 2022 Reg. Sess.). Therefore, in failing to comply with the SCRA's affidavit requirements, Goines also failed to comply with North Carolina state law.

[10] Morevoer, Goines's compliance, or non-compliance, with state law is a matter outside the United States' Complaint and should be excluded. "When addressing a motion to dismiss under Rule 12(b)(6), a district court must exclude matters outside the pleadings," *McKay Consulting, Inc. v. Rockingham Mem'l Hosp.*, 665 F.Supp.2d 626, 629 (W.D. Va. 2009), and cannot consider those matters "without converting the [Rule 12(b)(6)] motion into one for summary judgment," *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). Nowhere in the Complaint does it mention North Carolina law or allege that Goines followed it or failed to follow it. That is because this is a federal lawsuit brought by the United States alleging violations of a federal law, the SCRA. *See, generally,* Compl. ¶¶ 1-10. Any proffered defense based on state law is inapposite.

court.  *See* 50 U.S.C. § 3931(b)(1).  The court's decision to do or not to do something in response to a faulty military affidavit filed by Goines does not insulate Goines from SCRA liability.

Finally, Goines argues that in seeking court orders, it did not violate a section of the SCRA not at issue in the United States' Complaint, 50 U.S.C. § 3958, and that shows good faith with respect to the SCRA in general.  Goines Mot. 18.  Goines's alleged compliance with respect to 50 U.S.C. § 3958[11] – another matter outside the pleadings – is a non sequitur.  Merely because a defendant complies with one law or one statutory provision does not in any way demonstrate or even suggest compliance with every other law or provision.  Applied here, the fact remains that Goines engaged in a pattern or practice of violating a specific provision of the SCRA – 50 U.S.C. § 3931(b)(1) – by failing to file, and filing inaccurate, military affidavits in default judgment proceedings it brought against SCRA-protected servicemembers whose vehicles Goines towed and then auctioned off, disposed of, or sold.  Compl. ¶¶ 2, 29, 34.  That Goines may have complied with other provisions of the SCRA is simply irrelevant, and neither demonstrates good faith nor immunizes Goines from liability.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Goines's Motion to Dismiss.

---

[11] Section 3958 of the SCRA requires a person "holding a lien on the property or effects of a servicemember" to obtain a court order before enforcing that lien while the servicemember is in military service "and for 90 days thereafter . . .."  50 U.S.C. § 3958.

22

Dated: May 23, 2023

Respectfully submitted,


MICHAEL F. EASLEY, JR.                  KRISTEN CLARKE
United States Attorney                   Assistant Attorney General
Eastern District of North Carolina       Civil Rights Division


/s/ C. Michael Anderson                  SAMEENA SHINA MAJEED
C. MICHAEL ANDERSON                      Chief
Assistant United States Attorney          Housing and Civil Enforcement Section
Chief, Civil Division
150 Fayette Street, Suite 2100
Raleigh, North Carolina 27601            ELIZABETH A. SINGER
Telephone: (919) 856-4530                Director
Facsimile: (919) 856-4821                U.S. Attorneys' Fair Housing Program
Email: michael.anderson7@usdoj.gov        Housing and Civil Enforcement Section
N.C. Bar No. 42646
*Attorney for the United States*

                                         /s/ Tanya Ilona Kirwan
                                         TANYA ILONA KIRWAN
                                         Trial Attorney
                                         Housing and Civil Enforcement Section
                                         Civil Rights Division
                                         U.S. Department of Justice
                                         4 Constitution Square
                                         150 M Street, N.E., Suite 8.125
                                         Washington, District of Columbia 20530
                                         Telephone: (202) 532-3826
                                         Facsimile: (202) 514-1116
                                         Email: tanya.kirwan@usdoj.gov
                                         Maryland Bar

                                         *Attorneys for the United States*

## CERTIFICATE OF WORD COUNT

I, Tanya I. Kirwan, hereby certify that the foregoing document complies with the word count limits established by Local Civil Rule 7.2(f).  The foregoing document contains 7,242 words, as counted in compliance with Local Civil Rule 7.2(f)(1)

/s/ Tanya Ilona Kirwan
TANYA ILONA KIRWAN
Trial Attorney
Housing and Civil Enforcement Section
   Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, N.E., Suite 8.125
Washington, District of Columbia 20530
Telephone: (202) 532-3826
Facsimile: (202) 514-1116
Email: tanya.kirwan@usdoj.gov
Maryland Bar
*Attorney for the United States*

24

<u>**CERTIFICATE OF SERVICE**</u>

I, Tanya Ilona Kirwan, hereby certify that on <u>May 23, 2023</u>, I electronically filed the foregoing Response in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Christopher B. Dodd
Brooks Pierce LLP
P.O. Box 1800
Raleigh, NC 27602
Email: cdodd@brookspiece.com

Shana L. Fulton
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
150 Fayetteville Street, Suite 1700
Post Office Box 1800 (Zip 27602)
Raleigh, NC 27601
Email: sfulton @brookspierce.com

William Otis Walker, IV
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
150 Fayetteville Street, Suite 1700
Post Office Box 1800 (Zip 27602)
Raleigh, NC 27601
Email: wwalker@brookspierce.com

Respectfully submitted,

<u>/s/ Tanya Ilona Kirwan</u>
TANYA ILONA KIRWAN
Trial Attorney
Housing and Civil Enforcement Section
  Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, N.E., Suite 8.125
Washington, District of Columbia 20530
Telephone: (202) 532-3826
Facsimile: (202) 514-1116
Email: tanya.kirwan@usdoj.gov
Maryland Bar
*Attorney for the United States*

25